UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| THE DAVID R. MANTHEY ESTATE<br>by CLAYTON R. MANTHEY,<br>its Personal Representative,<br><br>    Plaintiff,<br><br>  v.<br><br>KRUSE, INC., d/b/a KRUSE<br>INTERNATIONAL d/b/a KRUSE<br>INTERNATIONAL AUTO AUCTION<br>and DEAN V. KRUSE,<br><br>    Defendants. | CAUSE NO.: 1:10-CV-51-TLS |

## OPINION AND ORDER

This matter is before the Court on the Motion For Partial Summary Judgment [ECF No. 45] filed by the Plaintiff, the David R. Manthey Estate by Clayton R. Manthey, its Personal Representative (the Estate). Three counts of the Estate's Complaint remain pending. The Estate seeks judgment in its favor on two of these counts, Counts V and VI, pursuant to Federal Rule of Civil Procedure 56. In addition, the Estate requests that the Court dismiss Count VII of the Complaint, which would allow the judgment to be final. The Defendants, Kruse, Inc., d/b/a Kruse International d/b/a Kruse International Auction and Dean V. Kruse have not filed a response. For the reasons stated in this Opinion and Order, the Plaintiff's Motion is denied.

## BACKGROUND

On February 12, 2010, the Estate filed a seven-count Complaint against the Defendants: Count I, breach of contract against Kruse, Inc.; Count II, unjust enrichment against Kruse, Inc.; Count III, breach of guaranty against Dean V. Kruse; Count IV, breach of promissory note

against Dean V. Kruse; Count V, conversion under Indiana Code § 35-43-4-3(a) against all the Defendants; Count VI, breach of trust against all the Defendants; and Count VII, replevin.

On July 27, 2010, the Estate moved for partial summary judgment. On September 13, the Court granted summary judgment to the Estate on Counts I and IV of the Complaint for the Defendants breaches of written contracts between the Estate and the Defendants. The Court dismissed Count III for unjust enrichment because it was only pleaded in the alternative to address the situation where the Court did not find an enforceable contract existed between the Estate and the Defendants. On October 12, the Court made the judgment final pursuant to Federal Rule of Civil Procedure 54(b). Counts V, VI, and VII of the Complaint remained pending.

On August 31, 2011, the Estate moved for summary judgment on the conversion and breach of trust claims. The Estate argues that it is entitled to summary judgment and statutory treble damages ($1,030,108 in this case) on the conversion claim because it is undisputed that the Defendants converted property of the Estate. The Estate asserts that summary judgment is appropriate on the breach of trust claim because the Defendants did not keep the funds belonging to the Estate in a trust account as required by Indiana statute. The Estate consents to the dismissal of Count VII, an action for replevin, because the Defendants no longer possess the property at issue.

## LEGAL STANDARD

Summary judgment is appropriate if the facts supported by materials in the record show that there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law. Fed. R. Civ. P. 56. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by citing to particular parts of materials in the record, the court may consider the fact undisputed for purposes of the motion and grant summary judgment if the motion and supporting materials show that the movant is entitled to it. Fed. R. Civ. P. 56(e).

Pursuant to Federal Rule of Civil Procedure 56(f), the Court may enter judgment independent of a motion for summary judgment in the following circumstances: "After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."

## STATEMENT OF FACTS[1]

The material, undisputed facts are:

  A. On September 1, 6, and 7, 2009, the Estate, directly or through its attorney, William A. Smiley, entered into twenty-five Consignment Information and Selling Agreements

---

[1] These facts are identical to those set forth in the Court's September 13, 2010, Opinion and Order, with the exception of paragraphs I and J, which are additional undisputed facts.

(collectively the "Agreements") in which Kruse, Inc., agreed, among other things, to auction and sell the Estate's collection of vintage motorcycles that were described within the Agreements.

B. As additional consideration and security for placing the motorcycles for auction with Kruse, Inc., on or about September 1, 2009, Dean V. Kruse delivered to the Estate, through the Estate's attorney, William Smiley, a letter (the "Guaranty Letter") in which Dean V. Kruse personally guaranteed to the Estate that no motorcycle would be released without payment and that he personally guaranteed "the payment of every bike sold and released." (9-1-09 Letter, ECF. No. 46-1 at 29.)

C. Under the terms of the Agreements, Kruse, Inc., agreed to remit the proceeds from the sale of the motorcycles, net of auction fees, to the Estate "within thirty (30) days of the date the Vehicle or item was auctioned off." (Manthey Aff. ¶ 6, Agreement, Additional Provisions ¶5, ECF No. 46-1 at 5.)

D. On or about September 9, 2009, Kruse, Inc. delivered to the Estate a Consignment Fees Due—Sorted By Lot (the "Schedule") for auctions held on September 3 to 8, 2009. This Schedule describes the motorcycles sold by Kruse, Inc. at auction, the total bid amount for each motorcycles, the fees retained by Kruse, Inc. from the sales, and the amount due and owing to the Estate. According to this Schedule, the total net auction proceeds due and owing to the Estate from the sale of the consigned motorcycles is $515,054.00 (the "Net Auction Proceeds").

E. On or about December 16, 2009, Dean V. Kruse executed and delivered a Promissory Note ("Note") to Clayton R. Manthey in which Mr. Kruse agreed to pay Mr. Manthey, both individually and as personal representative of the Estate, $515,054.00. The Note provided that if Mr. Kruse did not pay the $515,054.00 when due, the payee retained a right to

4

declare a default, at which time interest would begin to accrue at 12% per annum, until maturity, with attorney's fees and costs of collection. The promised date of payment was on or before thirty days "from date." (Promissory Note, ECF. No. 46-1 at 32.)

  F. Despite demands from the Estate, Kruse, Inc. has failed and refused, and continues to refuse, to remit to the Estate the Net Auction Proceeds, $515,054.00.

  G. Despite demands from the Estate, Dean V. Kruse has failed and refused, and continues to refuse, to remit to the Estate the sums guaranteed under the Guaranty Letter; that is payment of the sums due from the sale of the Vehicles.

  H. Dean V. Kruse has made no payments to the Estate of the sums promised under the Note.

  I. Included in the items that the Estate delivered to the Defendant for sale were a 9999 Munch Cutaway Munch Engine, two air pressure regulators, twelve hood ornaments, and miscellaneous parts, accessories, and memorabilia.

  J. The Estate has not received the proceeds from the sale of the personal property described in paragraph I, nor has the property been returned to the Estate.

## DISCUSSION

**A. Count V—Criminal Conversion**

In Count V of its Complaint, the Estate invokes Indiana Code § 35-43-4-3, which provides that a "person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion." A person who has suffered a pecuniary loss as a result of a criminal conversion may bring a civil action to recover the loss,

including attorney's fees and treble damages. Ind. Code § 34-24-3-1; *JET Credit Union v. Loudermilk*, 879 N.E.2d 594, 597 (Ind. Ct. App. 2008). Money "may be the subject of a conversion action only if it is a determinate sum that the defendant was entrusted to apply to a certain purpose." *Trietsch v. Circle Design Grp., Inc.*, 868 N.E.2d 812, 821 (Ind. Ct. App. 2007) (citing *Tobin v. Ruman*, 819 N.E.2d 78, 89 (Ind. Ct. App. 2004)); *see also Kopis v. Savage*, 498 N.E.2d 1266, 1270 (Ind. Ct. App. 1986). The money must be capable of being identified as a special chattel. *Newland Res., LLC v. Branham Corp.*, 918 N.E.2d 763, 776 (Ind. Ct. App. 2009); *Kopis*, 498 N.E.2d at 1270.

In *Tobin*, a departing minority shareholder in a law firm sued the firm and remaining partners, alleging that the firm's failure to pay him his share of retained earnings constituted conversion. The Indiana Court of Appeals determined that any wrongful withholding of retained earnings was, at most, a failure to pay a debt, which does not constitute criminal conversion as a matter of law. *Tobin*, 819 N.E.2d at 89. Likewise, in *Trietsch*, the claimed failure to pay retained earnings from corporate earnings was not conversion because the plaintiff did not identify any determinate sum that should have been paid to him or that he entrusted to the defendant to apply to any certain purpose. 868 N.E.2d at 822. In *Kopis*, Kopis, received a $40,000 deposit towards the purchase of certain property. *Kopis* comingled the deposit with other unrelated accounts and refused to refund the money to the plaintiff when the sale fell through. The Indiana Court of Appeals held that the comingled funds had ceased to be a separate, specifically identifiable chattel and that the plaintiff no longer had a property interest in the specific funds deposited. Thus, even though Kopis was legally obligated to repay the $40,000, his refusal to return the money was a failure to pay a debt, which generally does not support a finding of conversion.

Indiana courts have adopted the general rule that when there is no obligation to return identical money, but only the relationship of debtor and creditor, an action for conversion of money will not lie against a debtor. *Huff v. Biomet, Inc.*, 654 N.E.2d 830, 836 (Ind. Ct. App. 1995) ("The refusal to pay a debt will generally not support a conversion action."), *abrogated on other grounds by St. Vincent Hosp. and Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699 (Ind. 2002); *Nat'l Fleet Supply, Inc. v. Fairchild*, 450 N.E.2d 1015, 1019 (Ind. Ct. App. 1983) ("[W]here there is simply the refusal to pay a debt no action for conversion will lie.") *abrogated on other grounds by Mitchell v. Mitchell*, 695 N.E.2d 920 (Ind. 1998). Facts that would support an action for conversion of money can be found in *Midland-Guardian Co. v. United Consumers Club, Inc.*, 502 N.E.2d 1354 (Ind. Ct. App. 1987) (distinguishing *Kopis* to deny rehearing of *Midland-Guardian Co. v. United Consumers Club, Inc.*, 499 N.E.2d 792, 795 (Ind. Ct. App. 1986)). The Estate cites to *Midland* to support its claim that the money owed for the sale of motorcycles and personal property will support a finding of conversion. In *Midland*, the parties were engaged in an ongoing business relationship in which the defendant purchased installment contracts from the plaintiff. 502 N.E.2d at 1355. The defendant paid an agreed amount for the contracts less a set and certain percentage of the purchase price retained in a "holdback reserve fund." *Midland-Guardian Co.*, 499 N.E.2d at 794. This holdback reserve account did not belong to the defendant; it belonged to the plaintiff, subject only to the defendant's right to charge back uncollectible contracts according to a pre-arranged formula. *Id.* at 798–99; 502 N.E.2d at 1355. When the defendant refused to transfer the funds to the plaintiff after termination of the parties' business relationship, it knowingly exercised unauthorized control over the plaintiff's property, thereby committing criminal conversion. 502 N.E.2d at 1355.

In arriving at its decision, the *Midland* court distinguished the facts before it from those present in *Kopis*, noting that the specific holdback reserve funds were, in effect, "entrusted to [the defendant] to be separately held and accounted for. The holdback reserve agreements did not create an obligation to repay a debt, instead they placed [the defendant] in a position of responsibility to return the remainder of these separately identified accounts at the appropriate time." 502 N.E.2d at 1355. The Court finds that *Midland* is also distinguishable from the facts of this case. Here, the Defendants were not entrusted with a determinated sum of money. The Defendants were entrusted with motorcycles and other personal property, which the Estate authorized the Defendants to sell at auction. When the sale was complete, the Defendant sent the Estate a Schedule that described the motorcycles sold by Kruse, Inc. at auction, the total bid amount for each motorcycles, the fees retained by Kruse, Inc. from the sales, and the amount due and owing to the Estate. Although the Defendants were required, pursuant to their agreements with the Estate, to remit the sale proceeds to the Estate within thirty days from the date they were auctioned off, this wording acted to create a debt which the Defendant would owe the Estate. Likewise, when Dean Kruse personally guaranteed the payment of every bike sold and released, he created a contractual obligation the failure of which to satisfy constituted a breach of contract. Because the amounts due and owing were not certain and known until after the auction was completed, there was no determinate sum. Rather, the sum was contingent on the price that the highest bidder was willing to pay. Moreover, the record before the Court does not establish that the Defendants ever had possession of the funds.

The auction proceeds were not akin to a determinate sum of money that the Defendants were entrusted to apply to a certain purpose, and were not capable of being identified as special

chattel. The Defendants are not entitled to summary judgment on Count V of the Complaint, and the facts appear to support judgment as a matter of law in favor of the Defendants.

B.      **Count VI—Breach of Trust**

In Count VI of the Complaint, the Estate asserts that the Defendants committed breach of trust when they did not segregate the auction proceeds in a trust account as required by Indiana Code § 25-6.1-6-6. Indiana's Auctioneer and Auction Licensing Act requires that a licensed auctioneer keep in one or more trust accounts "all funds belonging to others that come into the possession of the licensee and are held by the licensee for more than twenty-four (24) hours after the funds become available for use by the licensee." Ind. Code § 25-6.1-6-6(a). The trust accounts are to "contain all auction proceeds not yet disbursed and all other funds belonging to others." *Id.*

The Estate does not argue that Indiana Code § 25-6.1-6-6 creates a private right of action and does not otherwise identify the elements of a cause of action for breach of trust. To the extent that breach of trust is a recognized tort in Indiana, it applies to instances of fraud and breach of fiduciary duty. *See Shriner v. Sheehan*, 773 N.E.2d 833, 846 (Ind. Ct. App. 2002) (stating that claim for breach of trust is a claim for breach of fiduciary duty); *Mack v. Am. Fletcher Nat'l Bank and Trust Co.*, 510 N.E.2d 725, 738–39 (Ind. Ct. App. 1987) (same). Moreover, the only evidentiary support that the Estate puts forth on this claim is that the Defendants have failed to pay money owed to the Estate from the sale of motorcycles and personal property. There is no designated evidence establishing that money from the sale of the auction items came into the Defendants' possession, a necessary prerequisite to putting the

money in a trust. Accordingly, the Plaintiff is not entitled to summary judgment on Count VI of the Complaint.

## CONCLUSION

For the forgoing reasons, the Plaintiff's Motion for Partial Summary Judgment [ECF No. 46] is GRANTED IN PART and DENIED IN PART. Count VII of the Complaint is dismissed. Pursuant to Federal Rule of Civil Procedure 56(f), the Court grants the Plaintiff until November 10, 2011, to file a submission responding to the Court's intention to grant summary judgment in favor of the Defendants on Counts V and VI of the Complaint. If the Plaintiff does not file a response by November 10, 2011, the Court will enter summary judgment for the Defendants on Counts V and VI.

SO ORDERED on October 27, 2011.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT